*E-Filed: December 18, 2014*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WEBPASS INC., | No. C14-02291 HRL |
| Plaintiff, | **ORDER GRANTING AFTAB BANTH'S MOTION TO DISMISS** |
| v. | |
| AFTAB BANTH; et al., | [Re: Docket No. 18] |
| Defendants. | |

Webpass Inc. sues Aftab Banth, Rick Peters, and Squareplanet LLC for trade secret misappropriation and related claims. On October 22, 2014, Banth filed a motion to dismiss. Dkt. No. 18. Webpass filed an opposition and Banth filed a reply. Dkt. Nos. 19, 22. Webpass and Banth[1] have expressly consented to having all matters proceed before a magistrate judge. A hearing was held on December 16, 2014. Based on the moving and responding papers, the Court grants the motion to dismiss.

**BACKGROUND**

Webpass provides high-speed internet service to consumers who reside and work in residential and commercial buildings.[2] Compl. ¶ 15. Webpass has developed proprietary and confidential information in the course of conducting business, including "its Ethernet network design and plans . . . ; its customer lists; customer pricing and financial information; marketing

---

[1] Banth is the only Defendant who has been served as of the date of this Order.
[2] Unless otherwise stated, the following facts are from Plaintiff's Complaint and assumed to be true for purposes of this motion. *See* Dkt. No. 1.

strategies; customer proposals; existing and prospective project products information and proposals; and Webpass' unique research and product and service development strategies." *Id.* ¶ 17.

Banth was employed by Webpass from October 2012 to February 2013. *Id.* ¶¶ 18, 21. "As a condition of his employment, Banth was required to acknowledge receipt of Webpass' Employee Handbook; and specifically agreed to comply with Webpass' confidentiality and non-disclosure policy." *Id.* ¶ 20. "Among other terms, this policy imposes on all of Plaintiff's employees the duty to safeguard Webpass' confidential and proprietary business information, and to limit the use of such information solely for Plaintiff's benefit." *Id*. During his employment, Banth gained access to Webpass's proprietary and confidential business information and plans. *Id.* ¶ 19.

After Webpass terminated his employment, Banth, along with Peters, established Squareplanet. *Id.* ¶ 24. As a result of Banth's previous employment by Webpass, "Defendants are now aware of and in possession of Webpass' valuable trade secrets." *Id.* ¶ 22. Defendants have deliberately copied Webpass's proprietary information, including "Plaintiff's network design and plans; its customer lists; customer pricing and financial information; marketing strategies; existing projects and proposals; and research and development strategies and related material." *Id.* ¶ 28.

Webpass brought suit against Defendants for: (1) unfair competition, false advertising, and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) misappropriation of trade secrets under the California Trade Secret Act, Cal. Civ. Code §§ 3426 *et seq.*; (3) unfair competition under California Business & Professions Code §§ 17200 *et seq.*; (4) intentional interference with prospective economic advantage; and (5) breach of contract.

Banth filed the present motion to dismiss on October 22, 2014. Dkt. No. 18. Webpass filed an opposition[3] and Banth filed a reply. Dkt. Nos. 19, 22.

---

[3] Webpass's opposition was signed by Attorney Ashe Puri, California Bar No. 297814, and filed under the ECF account of Attorney James Doroshow. In his reply, Banth argues that the

**LEGAL STANDARD**

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

**DISCUSSION**

**I.   MOTION TO DISMISS**

Banth moves to dismiss all claims asserted against him. Each will be addressed in turn.

**A.   Claim 1: Unfair Competition, False Advertising, and False Designation of Origin**

The first claim asserts unfair competition, false advertising, and false designation of origin in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). To state a claim for false advertising, the plaintiff must allege: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the

---

submission of Webpass's opposition was improper because Attorney Puri is not admitted to practice law before the Northern District of California. An independent search on the Attorney Bar Admission Status Lookup on the Northern District of California website reveals that Attorney Puri was admitted to practice before this District on November 17, 2014, five days after Banth filed his reply. Accordingly, Banth's objection to the submission of Webpass's opposition is moot.

tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

Here, Webpass has not alleged any false statement, omission, or implication made by Defendants regarding either Webpass's or Squareplanet's goods or services. While Plaintiff alleges that Defendants have violated the Lanham Act "by using in connection with Defendants' services and advertisements, and on their website, false designations of origin," Compl. ¶ 38, Plaintiff does not allege what the alleged false designations consist of.

Webpass argues that "Defendants have engaged in reverse passing off conduct, including misrepresenting the origin of the products and services sold by Squareplanet, misbranding Squareplanet's products and services on its website as Squareplanet's own proprietary technology, and omitting any reference to Webpass' name as the true owner of the technology." Opp. at 7. This argument fails. A reverse passing off claim is typically made where the defendant removes the name or trademark from a plaintiff's product without authorization, then sell that product under a different name or trademark chosen by the defendant. *See Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir. 1981). Here, Plaintiff alleges that Squareplanet engaged in its own internet service provider services using Webpass's technology, techniques, methods, and marketing materials. These allegations do not support a reverse passing off theory of relief.

To state a claim for false designation of origin, including infringement of an unregistered trademark, a plaintiff must allege: (1) defendant's use of a designation or false designation of origin, (2) in interstate commerce, (3) in connection with goods and services, (4) where the designation is

4

likely to cause confusion, mistake or deception as to the affiliation, connection, or association of defendant with another person, or as to the origin, sponsorship or approval of defendant's goods, services, or commercial activities by another person, and (5) that plaintiff has been or is likely to be damaged by these acts. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:13 (4th ed. 2004) (citing 15 U.S.C. § 1125(a)(1)(A)). "[U]nder the Lanham Act, 15 U.S.C. § 1125(a), the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks. Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical[:] is there a 'likelihood of confusion?'" *New W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1201 (9th Cir. 1979) (internal citations omitted).

Here, Webpass has not alleged any facts establishing a likelihood of confusion or deception amongst consumers as to the source of Plaintiff and Defendants' goods or services. Webpass has not alleged any facts establishing that Defendants represented or asserted in any way association with or sponsorship by Plaintiff.

In addition, the Complaint does not contain any allegations regarding Webpass's ownership of a protectable trademark, service mark, trade name, or other designation, nor identified any use by Defendants of any trademark, service mark, trade name, or other designation. Plaintiff's claim appears to be based on Defendants' alleged use of Plaintiff's business methods and information, which it claims constitute its trade secrets. *See* Compl. ¶ 37 ("Defendants have willfully and intentionally used and adopted in interstate commerce Plaintiff's proprietary and confidential business information in order to steal the substantial goodwill associated with Plaintiff's long-standing business reputation."). However, Webpass's proprietary and confidential business information is not a trademark, service mark, trade name, or other designation protectable under the Lanham Act, and its alleged use therefore cannot support a claim under Section 43(a). *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("Section 43(a) prohibits a broader

range of practices than does § 32, which applies to registered marks, but it is common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." (internal quotation marks and citation omitted)).

In its opposition, Webpass points to two allegations in the Complaint in which consumer confusion is purportedly alleged. *See* Opp. at 8-9 (citing Compl. ¶¶ 22, 29). These conclusory allegations, however, do not raise a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, Banth's motion to dismiss the first claim is granted with leave to amend.

### B.     Claim 2: Misappropriation of Trade Secrets

To state a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*, a plaintiff must allege: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Cytodyn, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008) (internal quotation marks omitted). To establish the existence of a trade secret, a plaintiff must allege: (1) the information "is valuable because it is unknown to others"; and (2) "the owner has attempted to keep [the information] secret." *DVD Copy Control Ass'n Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004); *see also* Cal. Civ. Code § 3426.1.

Here, Webpass fails to allege the existence of a trade secret. Specifically, Webpass does not allege any facts establishing that the information and methods alleged to constitute its trade secrets derive independent economic value from not being generally known to the public or to other persons

who can obtain economic value from their disclosure.  The Complaint conclusorily alleges that the "information had and continues to have significant independent economic value by virtue of not being generally known to the public or to Plaintiff's competitors." Compl. ¶ 45.  However, the Complaint does not set forth facts establishing how the alleged trade secrets derive such value.  Accordingly, Banth's motion to dismiss the second claim is granted with leave to amend.

### C. Claim 3: Unfair Competition and Claim 4: Intentional Inference with Prospective Economic Advantage

CUTSA "preempts common law claims that are based on misappropriation of a trade secret." *Ali v. Fasteners for Retail, Inc.*, 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008) (internal quotation marks omitted).  "Courts have held that where a claim is based on the 'identical nucleus' of facts as a trade secrets misappropriation claim, it is preempted by [C]UTSA." *Silicon Image, Inc. v. Analogix Semiconductor, Inc*., No. C-07-0635-JCS, 2007 WL 1455903, at *9 (N.D. Cal. 2007).

Webpass's unfair competition and intentional inference with prospective economic advantage claims are based on the same nucleus of facts as Plaintiff's misappropriation of trade secrets claim, and are therefore preempted. *See* Compl. ¶ 54 (in regards to the unfair competition claim, alleging that the unfair business act or practice consists of "misappropriating Plaintiff's confidential and trade secret information"); *id. ¶¶* 63-64 (in regards to the intentional interference with prospective economic advantage claim, alleging that "Defendants have engaged in intentional and wrongful acts, including by, among others, misappropriating Plaintiff's confidential and trade secret information").  Accordingly, Banth's motion to dismiss the third and fourth claims is granted with leave to amend.

### D. Claim 5: Breach of Contract

 "A statement of a cause of action for breach of contract requires a pleading of (1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4)

damage to plaintiff therefrom." *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971). To establish formation of a contract, a plaintiff must plead that: (1) the contract terms are clear enough that the parties could understand what each was required to do; (2) the parties agreed to give each other something of value; and (3) the parties agreed to the terms of the contract. *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998).

Here, Plaintiff has failed to allege the existence of a contract. The Complaint alleges that "[a]s a condition of his employment with Plaintiff, Banth specifically agreed to comply with Plaintiff's confidentiality and non-disclosure policy set forth in Plaintiff's employment handbook." Compl. ¶ 69. The Complaint, however, does not provide the language of the confidentiality and non-disclosure policy purportedly contained in the employment handbook, nor does it contain facts regarding the exact terms of the policy. Because of this, Webpass has failed to allege that the purported contract terms were clear enough that both Webpass and Banth could understand what each was required to do, and that Webpass and Banth agreed to give each other something of value. Accordingly, Banth's motion to dismiss the fifth claim is granted with leave to amend.

## II.   WEBPASS'S REQUEST FOR ATTORNEY'S FEES

Webpass requests attorney's fees, arguing that Banth's motion to dismiss was filed in bad faith for the purpose of delaying this action. This request is procedurally improper and will not be considered by the Court. *See* Civ. L.R. 7-8.

## CONCLUSION

For the reasons stated above, Banth's motion to dismiss the claims asserted against him is granted. The first, second, third, fourth, and fifth claims are dismissed without prejudice. If Webpass chooses to amend the complaint, the amended pleading shall be filed within 14 days from

///

///

8

the date this order is filed.  The amended pleading shall not add new claims for relief without first seeking leave of the Court.

**IT IS SO ORDERED.**

Dated:  December 18, 2014



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C14-02291 HRL Notice will be electronically mailed to:**

Bonnie Jean Wolf     bonniewolf@iplg.com

James Edward Doroshow     jdoroshow@foxrothschild.com, jochoa@foxrothschild.com

Jeffrey Stephen Kravitz     jskravitz@foxrothschild.com, clebrane@foxrothschild.com

Otto Oswald Lee     olee@iplg.com, patent_docket@iplg.com, tm_docket@iplg.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**